IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

HOLLIE ROERICK, individually and as guardian )
of ALEX ROERICK, a minor, )
)
   Plaintiffs, )  NO. _____
)
  v. )  Demand for Jury Trial
)
JBS USA, LLC d/b/a "JBS Swift & Company," )
a foreign corporation, )
)
   Defendant. )
_____)

## COMPLAINT FOR DAMAGES

COME NOW the Plaintiffs, by and through their attorneys of record, Kara Knowles of Montgomery Little Soran & Murray, PC, and William D. Marler of Marler Clark LLP (admission *pro hac vice* pending), and allege as follows:

### I. PARTIES

1. The Plaintiff Hollie Roerick lives in Albuquerque, New Mexico. Plaintiff Hollie Roerick is the natural parent of the minor child, Alex Roerick, who is thirteen years old.

2. The Defendant, JBS USA, LLC, d/b/a "JBS Swift & Company" (hereinafter "JBS Swift") is a foreign corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Greeley, Colorado.

3. At all times relevant hereto, JBS Swift was a manufacturer and seller of various beef products sold throughout the United States, including in the State of New Mexico.

### II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is

between citizens of different states, and because the Defendant has certain minimum contacts with the State of Colorado such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

5.    Venue in the United States District Court for the District of Colorado is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims and causes of action occurred in this judicial district—i.e., the Defendant's manufacture of beef products.  Additionally, the Defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

### III.  GENERAL ALLEGATIONS

### JBS Swift *E. coli* O157:H7 Outbreak

6.    On June 24, 2009, JBS Swift announced a voluntary product recall after it was notified by the Food Safety and Inspection Service (FSIS) and the Centers for Disease Control (CDC) of a possible link between reported illnesses caused by *E. coli* O157:H7 and the consumption of JBS Swift's beef products.

7.    As of July 1, 2009, twenty-three people in nine states have been infected by a genetically indistinguishable strain of *E. coli* O157:H7 linked to JBS Swift's beef products.  At least twelve people have have been hospitalized as a result of their infections, and two developed hemolytic uremic syndrome (HUS), including the minor Plaintiff Alex Roerick.

**Plaintiffs' Injuries**

8.      During the week before onset of his *E. coli* O157:H7 illness, including on May 10 and 11, 2009, Alex Roerick consumed JBS Swift's beef products.  The products that Alex consumed, which were subsequently included in JBS Swift's June 2009 recall, had been purchased at a Smith's Food and Drug Center in Albuquerque, New Mexico.

9.      On or about May 13, 2009, Alex began to suffer from flu-like symptoms, including pronounced fatigue and lethargy, mild fevers, diarrhea, and some nausea and vomiting. Alex's initial symptoms continued for the next two days.

10.     On or about May 15, 2009, Alex's symptoms became far worse, including a fever, bloody diarrhea, nausea, vomiting, and severe abdominal cramps.  The same day, Hollie Roerick rushed her son to his pediatrician's office for medical treatment.  At the clinic, Alex gave a stool sample.   Hollie was encouraged to take Alex to the Emergency Room at Presbyterian Hospital.

11.     At the Emergency Room, Alex was treated and then admitted for observation.  He would remain hospitalized until May 19.

12.     After discharge, Alex rested at home for the next two days.  His symptoms, however, continued to worsen.  Bouts of severe bloody diarrhea were occurring every few minutes.  Hollie Roerick again rushed her ailing son to the Emergency Room at Presbyterian Hospital on May 21, 2009.

13.     Alex Roerick was ultimately re-admitted to Presbyterian Hospital, where his symptoms persisted, despite intravenous hydration and treatment of his severe nausea.  Blood tests showed that he had developed hemolytic uremic syndrome (HUS).

14.     Alex became severely anemic during his hospitalization, and he continued to vomit and suffer frequent bouts of bloody diarrhea.  He would ultimately remain hospitalized until May 27, 2009.

15.     Alex's stool sample ultimately tested positive for *E. coli* O157:H7, and was later determined to match the strain of *E. coli* O157:H7 associated with the JBS Swift outbreak and recall.  Alex continues to recover from his *E. coli* O157:H7-induced HUS illness.  He has since had to endure regular blood draws to monitor his recovery, and he continues to suffer from extreme fatigue.

16.     The Plaintiffs have incurred and will continue to incur medical expenses, have suffered and will continue to suffer pain, loss of enjoyment of life, emotional distress, and medical problems in the future as a direct and proximate result of Alex Roerick's consumption of contaminated JBS Swift beef products.

## IV.  CAUSES OF ACTION

### (Strict Product Liability)

17.     The Plaintiffs hereby incorporate paragraphs 1 through 16 by this reference as if each paragraph was set forth herein in its entirety.

18.     JBS Swift is a product manufacturer within the meaning of the Colorado Product Liability Act, C.R.S.  §§13-21-401 *et seq.* ("Act").  JBS Swift manufactured the beef products that were the source of Plaintiffs' illness and legal injuries.  The beef product that caused Plaintiffs' illness and legal injuries was a product within the meaning of the Act.

19.     Under the Act, JBS Swift owed a duty to the Plaintiffs to manufacture beef products that were not defective and that were reasonably safe.  The beef product that caused

Plaintiffs' illness and legal injuries was defective, and was unreasonably dangerous, because it was contaminated and adulterated with *E. coli* O157:H7.

20.     Because JBS Swift manufactured the beef product that caused the Plaintiffs' illness and legal injuries, which was defective and not reasonably safe, JBS Swift is strictly liable to the Plaintiffs for their personal injuries and related economic loss.

(**Breach of Warranties**)

21.     The Plaintiffs hereby incorporate paragraphs 1 through 20 by this reference as if each paragraph was set forth herein in its entirety.

22.     JBS Swift owed a duty to the Plaintiffs to manufacture beef products that conformed to its express and implied warranties, including, but not limited to, the implied warranty of merchantability and the implied warranty of fitness for a particular use or purpose.

23.     The beef product that caused Plaintiffs' illness and legal injuries, which was manufactured and sold by JBS Swift, was contaminated with E. coli O157:H7, a pathogen that is harmful to health, and it would therefore not pass without exception in the trade.  The beef product was thus in breach of the implied warranty of merchantability.

24.     The beef product that caused Plaintiffs' illness and legal injuries, which was manufactured and sold by JBS Swift, was contaminated with E. coli O157:H7, a pathogen that is harmful to health,  and it was therefore not fit for the uses and purposes intended by either the Plaintiffs or the Defendant, i.e., human consumption.  The beef product was thus in breach of the implied warranty of fitness for its intended use.

25.     Because JBS Swift manufactured and sold a beef product that was in breach of its express and implied warranties, JBS Swift is liable to the Plaintiffs for their personal injuries and related economic loss.

**(Negligence and Negligence *per se*)**

26.     The Plaintiffs hereby incorporate paragraphs 1 through 25 by this reference as if each paragraph was set forth herein in its entirety.

27.     JBS Swift owed the ultimate consumers of its products, including the beef product that caused the Plaintiffs' illness and associated legal injuries, a duty to use reasonable care in the storage, manufacture, and sale of food.

28.     JBS Swift breached its duties by, among other things, committing the following acts and omissions of negligence:

a.     Failure to adequately maintain or monitor the sanitary conditions of its premises, employees, and the beef products that it manufactured;

b.     Failure to operate its premises in a safe, clean, and sanitary manner;

c.     Failure to prevent the transmission of pathogens, including *E. coli* O157:H7, from its beef products to the consumers of its products;

d.     Failure to properly train employees and agents how to prevent the transmission of pathogens, including *E. coli* O157:H7, on its premises, or in its beef products;

e.     Failure to properly supervise employees and agents to prevent the transmission of pathogens, including *E. coli* O157:H7, on its premises, or in its beef products;

f.     Failure to maintain its premises in a clean, sanitary, and healthful manner.

29.     JBS Swift was also negligent in manufacturing, distributing and selling beef products that were not reasonably safe because adequate warnings or instructions were not provided, including but not limited to the warning that the beef products were contaminated by *E. coli* O157:H7, a pathogen harmful to human health, and thus should not be given to, or eaten by, people.

30.     JBS Swift owed a duty to Plaintiffs to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of its beef products.  These statutory and regulatory provisions included, but were not limited to, the Federal Food, Drug, and Cosmetics Act, which bans the manufacture, sale and distribution of any "adulterated" food.  JBS Swift failed to observe this duty.

31.     In the manufacture and production of its beef products, JBS Swift also had a duty to use supplies and/or raw materials that were in compliance with applicable federal, state, and local laws, ordinances and regulations; that were from safe and reliable sources; and that were clean, wholesome, free from spoilage and adulteration, and safe for human consumption, but failed to do so.

32.     The Plaintiffs are among the class of persons intended to be protected by the statutory and regulatory provisions pertaining to JBS Swift's manufacture, distribution, storage, labeling, and sale of beef products.

33.     As a result of JBS Swift's negligent acts and omissions, and as a result of JBS Swift's violation of statutes designed to protect the Plaintiffs from contaminated foods, JBS Swift is liable to the Plaintiffs for their personal injuries and related economic loss.

## DAMAGES

34.     The Plaintiffs hereby incorporate paragraphs 1 through 33 by this reference as if each paragraph was set forth herein in its entirety.

35.     Plaintiffs have suffered general and special, incidental and consequential damages as the direct and proximate result of the acts and omissions of the defendant, which damages shall be fully proven at the time of trial, including, but not limited to, damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and

future; travel and travel-related expenses, past and future; emotional distress and future emotional distress; pharmaceutical expenses, past and future; wage loss; and other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray:

1. That the Court award Plaintiffs judgment against Defendant in such sum as shall be determined to fully and fairly compensate plaintiffs for all general, special, incidental and consequential damages incurred, or to be incurred, by them as the direct and proximate result of the acts and omissions of Defendant;

2. That the Court award Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred;

3. That the Court award Plaintiffs the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

4. That the Court award such other and further relief as it deems necessary and proper in the circumstances.

## JURY DEMAND

The Plaintiffs hereby demand a jury trial.


Dated:  July 6, 2009.


By: s/ Kara Knowles
    Kara Knowles
    Montgomery Little Soran & Murray, P.C.
    5445 DTC Parkway, Suite 800
    Greenwood Village, Colorado 80111
    Telephone:  (303) 773-8100
    E-mail:  kknowles@montgomerylittle.com


    William D. Marler, WSBA #17233
    MARLER CLARK, LLP PS
    701 First Avenue, Suite 6600
    Seattle, WA  98104
    Telephone: (206) 346-1888
    E-mail: bmarler@marlerclark.com
    (pending admission pro hac vice)

    Attorneys for the Plaintiffs